No JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SAMANTHA NORD-SHAFER, A
DELAWARE CITIZEN; & REBECCA
KENNEDY, A NEW YORK CITIZEN

              Plaintiffs,

     v.

NARCONON INTERNATIONAL, A
CALIFORNIA CORPORATION;
ASSOCIATION OF BETTER LIVING AND
EDUCATION INTERNATIONAL, A
CALIFORNIA CORPORATION;
NARCONON FREEDOM CENTER D/B/A
NARCONON FREEDOM TREATMENT
CENTER, A MICHIGAN CORPORATION;
& DOES 1-100; ROE CORPORATIONS I-X,
INCLUSIVE;

              Defendants.

CASE NO.  CV 14-6438-R

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS

      Before the Court is Defendants Narconon International ("NI") and Association of Better

Living and Education International's ("ABLE") Motion to Dismiss, which was filed on October

15, 2014.  Having been thoroughly briefed by both parties, this Court took the matter under

1  submission on March 10, 2015.

2      Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper only when a complaint

3  exhibits either a "(1) lack of a cognizable legal theory or (2) the absence of sufficient facts alleged

4  under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.

5  1988). Under the heightened pleading standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544

6  (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a plaintiff must allege "enough facts to state a

7  claim to relief that is plausible on its face," so that the defendant receives "fair notice of what

8  the…claim is and the grounds upon which it rests." Twombly, 550 U.S. at 570. The Plaintiff

9  must plead factual content that allows the court to draw the reasonable inference that the defendant

10  is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. The court will not accept "threadbare

11  recitals of the elements of a cause of action, supported by mere conclusory statements. . . ." *Id.*

12      "Generally, a district court may not consider any material beyond the pleadings in ruling

13  on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

14  1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the

15  complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a

16  complaint and whose authenticity no party questions, but which are not physically attached to the

17  pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnel*,

18  14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of

19  "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

20      Plaintiffs, Samantha Nord-Shafer ("Nord-Shafer") and Rebecca Kennedy ("Kennedy"),

21  filed suit against Defendants Narconon International ("NI"), Association for Better Living and

22  Education International ("ABLE"), and Narconon Freedom Center ("NFC"), alleging the

23  following five causes of action: (1) Breach of Contract; (2) Negligence; (3) Fraud; (4) Premises

24  Liability; and (5) Injunctive Relief.

25      NI and ABLE's principal argument in support of their motion to dismiss is that Plaintiffs

26  have failed to allege facts establishing a principal-agent relationship between NI, ABLE, or NFC,

27  and therefore NI and ABLE are not subject to vicarious liability for NFC's actions. The leading

28  case in California on whether a contract between two companies creates an agency relationship is

*Patterson v. Domino's Pizza, LLC*, 333 P.3d 723 (Cal. 2014). Under California law, an agency relationship exists where the alleged principal has the right to control the "means and manner" of the alleged agent. *Cislaw v. Southland Corp.*, Cal. Rptr. 2d 386, 388 (Cal. Ct. App. 1992). The *Patterson* court identified several factors that may bear on whether an agency relationship exists, including a right to control: (1) hiring, (2) direction, (3) supervision, (4) discipline, (5) discharge, and (6) relevant day-to-day aspects of the workplace behavior of the franchisee's employees. *Patterson*, 333 P.3d at 739.

Defendants NI and ABLE argue that Plaintiffs' attempt to establish an agency relationship fails because the bulk of the agency allegations are devoid of any facts at all, and are instead bare assertions that NI and ABLE controlled NFC. Defendants further argue that Plaintiffs' allegations of control do not evidence the type of day-to-day control required to establish that NFC was an agent of NI or ABLE.

Plaintiffs' Complaint not only alleges that NI and ABLE exercise "control over the time, manner, and method in which the operations and administration of NFC's facility are run," but also includes specific factual assertions that NI and ABLE manage NFC's daily operations, conduct inspections of Narconon centers, create licensing, and approve marketing materials. (Comp. at ¶¶ 5,9). Plaintiffs further allege specific areas of NFC's business that NI and ABLE control, including hiring, firing, and making human resource decisions on behalf of NFC. (Compl. at ¶ 55). In support of these allegations, Plaintiffs cite to NI literature called, "Opening a Successful Narconon Center," and "Running an Effective Narconon Center," and assert that NI and ABLE also control the curriculum at NFC. (Compl. at ¶ 55). Finally, Plaintiffs allege that NI and ABLE dictate which books are sold in the bookstores of Narconon facilities, control which pictures of L. Ron Hubbard are displayed, and control NFC's finances by requiring regular reports and accountings. (Compl. at ¶ 56). Accordingly, Plaintiffs' allegations plausibly state that NI and ABLE are subject to vicarious liability for NFC's actions.

Defendants NI and ABLE next argue that Plaintiffs' five causes of action are insufficient to state a claim to relief that is plausible on its face. Under California law, there are four elements to prove breach of contract: (1) the existence of a contract, (2) plaintiff's performance or excuse for

1    nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Oasis West*

2    *Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).

3            Here, Plaintiffs allege the existence of a contract "whereby Defendants agreed, in exchange

4    for consideration, to provide secular, residential drug, and alcohol treatment to plaintiffs."

5    (Compl. at ¶ 60).  Plaintiffs allege that Kennedy paid $19,900 to NFC for her daughter, Nord-

6    Shafer, to attend their rehabilitation program, and that Defendant NFC agreed to provide treatment

7    in exchange.  (Compl. at ¶ 17).  Plaintiffs further allege that this contract was breached through

8    Defendants' failure to provide the agreed upon drug treatment, and that as a result Plaintiffs

9    suffered damages in the form of medical problems and other monetary damages through the loss

10   of the contract price.  These facts, taken as true, could support a finding of breach of contract, and

11   Defendants Motion to Dismiss Plaintiffs' first cause of action is DENIED.

12           Under California law, there are four elements to negligence: (1) duty, (2) breach, (3)

13   causation, and (4) damages.  *Conroy v. Regents of Univ. of Cal.*, 203 P.3d 1127, 1132 (Cal. 2009).

14   The elements of a claim for premises liability are the same as for a negligence claim.  *See*

15   *McIntyre v. Colonies-Pacific, LLC*, 175 Cal. Rptr. 3d 440, 444 (Cal. Ct. App. 2014).  First,

16   Plaintiffs allege that Defendants owed Plaintiffs two duties: (1) "to render substance abuse

17   treatment to Plaintiff in a manner that did not subject him to an unreasonable risk of harm," and

18   (2) "to render reasonably safe and effective treatment to Plaintiff."  (Compl. at ¶ 68).  Second,

19   Plaintiffs allege that Defendants breached these duties in four ways: (1) "instructing Plaintiff to sit

20   in the sauna for 4-6 hours a day…while ingesting dangerous amounts of Niacin and other

21   vitamins," (2) "failing to staff the NFC treatment facility…with qualified medical personnel," (3)

22   "failing to provide duly qualified counselors to administer treatment," and (4) "providing

23   Scientology in lieu of substance abuse treatment."  (Compl. at ¶ 69).  Plaintiffs further allege that

24   Defendants were aware of the dangers of the sauna, and failed to provide medical oversight.

25   (Compl. at ¶ 83).  Finally, Plaintiffs allege that these breaches caused Plaintiffs physical and

26   mental injuries.  Accordingly, Plaintiffs have pled sufficient facts to state claims of negligence and

27   premises liability that are plausible on their face, and Defendants' Motion to Dismiss Plaintiffs'

28   second and fourth causes of action is DENIED.

Under California law, there are five elements to prove fraud: (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) damages. *Small v. Fritz Companies, Inc.*, 65 P.3d 1255, 1258 (Cal. 2003). Federal Rule of Civil Procedure 9(b) requires that a plaintiff's allegations be specific enough to give defendants notice of the particular conduct so that they can defend against the charge and not just deny that they have done anything wrong. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Here, Plaintiffs allege six misrepresentations made by NFC through its recruiter David, other intake counselors, and Defendants' website: (1) NI has a 70-80% success rate; (2) the NI program is secular and does not involve the study or practice of any religion; (3) NI and NFC are not in any way connected to ABLE or the Church of Scientology; (4) Plaintiff would receive effective and scientifically proven counseling for his substance abuse; (5) NI and NFC's sauna program is safe and has be scientifically proven as effective; and (6) Plaintiff would be safely medically detoxed at a facility under medical supervision. (Compl at ¶ 76). Plaintiffs allege these statements were made with knowledge of their falsity, and have met the pleading standards of Rule 9(b). Accordingly, Defendants' Motion to Dismiss Plaintiffs' third cause of action is DENIED.

Plaintiffs have agreed to dismiss their claim for injunctive relief. It is therefore DISMISSED.

Defendants' final argument is that Plaintiffs' contract with NFC requires arbitration of Plaintiffs' claims, and therefore, Plaintiffs should be compelled to arbitration. Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The court must determine (1) whether there exists a valid

5

agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]greements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011).

On January 2, 2013, Plaintiffs Samantha Nord-Shafer and Rebecca Kennedy executed the "Narconon Freedom Center, Inc. Admission Agreement," ("Agreement"). Page 11 of the Agreement contains a section entitled "Dispute Resolution Arbitration." This section provides:

> The parties agree that any controversy, dispute or claim arising out of or relating to or involving this Admission Agreement shall be resolved by binding arbitration. Those claims subject to arbitration include but are not limited to any and all disputes or controversy regarding services provided, conditions at the Freedom Center Facility, the staff, the results of the program, other student's actions, claims of discrimination, consumer complaint or any other cause of action.

> This provision applies to disputes, controversies or claims involving not only Narconon Freedom Center, Inc. but any related entities, licensors, the members of the Board of Directors, the officers and the staff. The arbitrator shall be agreed upon by the parties. (In the event the parties cannot agree upon an arbitrator, the American Arbitration Association shall, upon proper application by the parties, appoint an arbitrator.) The parties shall each pay and be responsible for half the fees and costs of the arbitration. The arbitration shall take place in Oakland County, Michigan unless the parties otherwise agree. The parties understand and agree that in the event of arbitration, the decision of the arbitrator shall be binding and conclusive on the parties. The arbitration proceedings and the decision of the arbitration shall be private and confidential.

> Prior to arbitration, the parties may, but are not required to seek to resolve the matter through a qualified mediator approved by a Michigan court. The parties shall each pay half the costs of such mediation. The mediation shall be non-binding.

1   Dkt. No. 22, Ex. A.

2       Plaintiffs argue that the contract at issue here is not valid, and therefore, the arbitration

3   clause is not binding.  However, a review of the record indicates that Plaintiffs were neither

4   subject to fraud nor duress when entering the Agreement, and the terms of the Agreement are not

5   unconscionable so as to invalidate the Agreement.  In fact, Plaintiffs have argued in their

6   opposition to Defendants NI and ABLE's motion to dismiss that the contract is in fact valid and

7   enforceable.  Thus, Plaintiffs' arguments against the validity of the contract between Plaintiff and

8   NFC are unconvincing, and a valid agreement to arbitrate exists.

9       Furthermore, the disputes at issue fall within the terms of the arbitration clause.  The

10  arbitration clause specifically states that it encompasses "all disputes or controversy regarding

11  services provided, conditions at the Freedom Center Facility, the staff, the results of the program,

12  other student's actions, claims of discrimination, consumer complaint or any other cause of

13  action."  Therefore, Plaintiffs' claims for breach of contract, negligence, fraud, and premises

14  liability, are subject to the arbitration clause.

15      Finally, the plain text of the arbitration clause states it "applies to disputes, controversies or

16  claims involving not only Narconon Freedom Center, Inc. but any related entities, licensors, the

17  members of the Board of Directors, the officers and the staff." Accordingly, the arbitration clause

18  applies not only to NFC, but also to NI and ABLE.

19  / / / / /

20  / / / / /

21  / / / / /

22  / / / / /

23  / / / / /

24  / / / / /

25  / / / / /

26  / / / / /

27  / / / / /

28  / / / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Under the FAA, the Court must stay litigation pending the completion of arbitration when it determines that "the issue involved in such suit or proceeding is referable under such an agreement." 9 U.S.C. § 3.  Accordingly, this action is STAYED pending arbitration.

**IT IS HEREBY ORDERED** that Defendants NI and ABLE's Motion to Dismiss for failure to state a claim should be DENIED as to Plaintiffs' first, second, third, and fourth causes of action, and GRANTED as to Plaintiffs' fifth cause of action.  This action is STAYED pending arbitration. (Dkt. No. 24)

Dated: March 17,  2015.

_____
                MANUEL L. REAL
        UNITED STATES DISTRICT JUDGE

8